IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| WINDELL WEAVER,<br><br>      Plaintiff,<br><br>  v.<br><br>WILLIAM DANFORTH, RICKY STONE, DEANNA CLEMENTS, and KAMERON WILLIAMS,<br><br>      Defendants. | CIVIL ACTION NO.: 5:23-cv-61 |

### REPORT AND RECOMMENDATION

Defendants filed a Motion to Dismiss.  Doc. 35.  Plaintiff filed a Response in opposition.  Doc. 42.  Defendants filed a Reply.  Doc. 45.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss.

### BACKGROUND

Plaintiff filed this 42 U.S.C. § 1983 suit on July 3, 2023, claiming that Defendants' failure to consider his requests for protective custody led to him being attacked by a fellow inmate at Coffee Correctional Facility.  Doc. 1.  In the Complaint, Plaintiff describes a series of events that made him concerned for his safety.  Plaintiff also describes Defendants' alleged refusals to consider his requests for protective custody.  Specifically, Plaintiff alleges he sought protective custody in September 2022 and on October 30, 2022, November 2, 2022, December 1, 2022, and January 6, 2023.  Id. at 6–9.  On January 19, 2023, Defendant Williams informed Plaintiff that his requests for protective custody had been denied.  Id. at 9–10.  On January 20, 2023, Plaintiff filed a grievance about being denied protective custody.  Id. at 10.  Then, on

January 24, 2023, Plaintiff reapplied for protective custody.  Id.  At an administrative segregation hearing on May 8, 2023, Plaintiff was again told his requests for protective custody were denied.  Id.  Plaintiff contends he was "attacked and beaten until [he] was unconscious" on May 13, 2023.  Id. at 5.

Defendants filed a Motion to Dismiss on March 18, 2024.  Doc. 35.  Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff did not fully exhaust his available administrative remedies prior to filing his Complaint.  Specifically, Defendants state Plaintiff successfully appealed his grievance, but he did not act on the appeal decision's instructions.  Id.  In response, Plaintiff states he filed a grievance and appealed it, which is all the prison's administrative procedures require.  Doc. 42.

## DISCUSSION

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA

2

requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

3

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 634 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to

'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

5

In <u>Turner v. Burnside</u>, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Id.</u>; see also <u>Bracero v. Sec'y, Fla. Dep't of Corr.</u>, No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the <u>Turner</u> test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. <u>Glenn v. Smith</u>, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing <u>Turner</u>, 541 F.3d at 1082); <u>Pavao</u>, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." <u>Abram</u>, 759 F. App'x at 860 (quoting <u>Whatley I</u>, 802 F.3d at 1209); <u>Turner</u>, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." <u>Turner</u>, 541 F.3d at 1082; see also <u>Glenn</u>, 706 F. App'x at 563–64; <u>Pearson</u>, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." <u>Bracero</u>, 2018 WL 3861351, at *1 (quoting <u>Whatley I</u>, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." <u>Berger</u>, 709 F. App'x at 541 n.4 (citing <u>Bryant</u>, 530 F.3d at 1376); <u>Glenn</u>, 706 F. App'x at 563–64; <u>Singleton v. Dep't of Corr.</u>, 323 F. App'x 783, 785 (11th Cir. 2009) (citing <u>Bryant</u>, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding

6

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.   Applying Turner

#### A.   The Georgia Department of Corrections' ("GDC") Administrative Remedies

Coffee Correctional Facility, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 35 at 5. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Doc. 35-1 at 7. Under SOP 227.02, the grievance procedure applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "[n]on-Grievable Issues." Doc. 35-1 at 10.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 14. Under Step 1, the inmate must submit a completed grievance form within 10 calendar days of "the date the inmate knew, or should have known, of the facts giving rise to the grievance." Id. Then, the inmate may appeal the decision to the GDC Central Office under two circumstances: (1) after the inmate receives the Warden's response to the grievance; or (2) after the time allotted for the Warden to decide has expired. Id. at 20. The SOP provides a 40-day period for the Warden's response to be given to the inmate, with the possibility provided for a 10-day extension. Id. at 17. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. at 20. If the Commissioner determines a grievance should have been accepted and processed, the grievance is returned for investigation and the Warden/Superintendent has 15 calendar days from receipt to deliver the decision to the inmate. Id. at 21.

#### B.   Plaintiff Exhausted All Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the

plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.  To give Plaintiff the full benefit of the Turner approach, the Court considers Plaintiff's factual allegations in his Complaint, too.  See, e.g., Butler v. Flenory, No. 5:13-CV-9, 2014 WL 4629163, at *1 (M.D. Ga. Sept. 15, 2014); Barner v. Sasser, No. 5:16-CV-319, 2018 WL 7075196, at *5 (N.D. Fla. Dec. 10, 2018), report and recommendation adopted, 2019 WL 251484 (N.D. Fla. Jan. 17, 2019); McKenzie v. Staten, No. 6:17-CV-83, 2020 WL 5638621, at *10 (S.D. Ga. Sept. 3, 2020), report and recommendation adopted, 2020 WL 5637085 (S.D. Ga. Sept. 21, 2020) (all considering allegations in the plaintiff's complaint or amended complaint at Turner step one).

Defendants contend that Plaintiff's Complaint should be dismissed because he did not exhaust administrative remedies as to Grievance Number 348419, which he submitted on January 20, 2023.  Doc. 35 at 6.  Defendants state that Plaintiff's grievance was denied on February 14, 2023, and he received the denial on February 23, 2023.  Plaintiff appealed the grievance, claiming he was denied an administrative segregation hearing and he was not interviewed.  Id.  On March 22, 2023, the GDC Central Office partially granted the grievance.  Doc. 35-1 at 36.  The text of that decision reads as follows:

> A member of my staff has reviewed your grievance.  The review revealed that you are questioning why you were denied Protective Custody (PC).  You stated that on "01/19/2023 between 1200 hrs and 1400 hrs, Lt. Williams" informed you that you were denied Protective Custody.  You questioned, "why wasn't a Admin. Segregation Protective Custody Hearing held?"  Review revealed that the Administrative Review denied the request for your PC request which was dated 1-16-23 at 1334 (time).  You were not made aware of the results until approximately 2-8-23 by Sgt. Kameron Williams.  Therefore, this grievance is being partially granted and it is being recommended that you be allowed to resend your request for Protective Custody and that a new Protective Custody Investigation be completed.  Afterwards, you will be notified of the findings in a timely manner.

Id. Thus, Plaintiff was given the opportunity to reapply for protective custody. Plaintiff did not reapply for protective custody until May 31, 2023, after he was attacked. Doc. 35 at 6. Defendants argue Plaintiff's decision to not reapply for protective custody in response to the Central Office appeal decision constitutes a failure to exhaust because "the issue he originally grieved—denial of his protective custody request—was not fully decided." Id. at 12. According to Defendants, Plaintiff's "grievance was granted, and he was instructed to do something— submit a new request for protective custody," but he did not do what was he was directed to do."[1] Id.

Plaintiff does not dispute any of the facts related to March 22, 2023 Central Office decision. Plaintiff does, however, contend he exhausted because he used all steps prescribed by prison administrative procedures. Doc. 42 at 5. In other words, Plaintiff contends that he was not required to reapply for protective custody in order to exhaust his administrative remedies.

There is no factual conflict here. The parties agree Plaintiff did not reapply for protective custody in response to the appeal decision. The dispute instead turns on whether Plaintiff was required to reapply for protective custody to fully exhaust his administrative remedies. Defendants argue he was; Plaintiff argues he was not. Because the parties agree on the facts, but disagree about the implications of those facts, the analysis is the same under both step one and step two of Turner.

---

[1] Defendants also explain Plaintiff filed a second grievance, Grievance Number 353761, prior to filing the Complaint. Doc. 35 at 12. Plaintiff filed that grievance on June 9, 2023, and did not wait for a decision on it before filing suit. Id. at 7. As I find Plaintiff did exhaust remedies on his January 20, 2023 grievance, his failure to do so regarding the June 9, 2023 grievance is not relevant, and I do not address it here. Plaintiff's January 20, 2023 grievance is the operative grievance relevant to this Motion to Dismiss, by Defendants' own admission. See Doc. 45 at 2 ("There is only one relevant grievance—Grievance No. 348419.").

9

Defendants state that Plaintiff "was aware" of prison grievance procedures and "had access to the Offender Handbook, which outlines the procedure for submitting and pursuing an administrative grievance." Doc. 35 at 10. But Defendants also concede Plaintiff followed the procedure in the handbook. The action that Defendants claim Plaintiff was required to take—reapplying for protective custody—is not mentioned anywhere in the handbook or the SOP. The direction to file a new request for protective custody was mentioned only in the body of the appeal decision.

According to the SOP, the final step in the grievance procedure is for the Warden/Superintendent to "process and deliver" a favorable appeal decision to an inmate within 15 days of receipt of the returned grievance. Doc. 35-1 at 21. The SOP mandates no next step for an inmate to take. "[T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2022)). Requiring an inmate to take additional action after this point effectively adds content to the SOP where none exists.

Defendants argue the Central Office appeal decision created an additional exhaustion requirement. But the decision itself states, "[I]t is *recommended* that you be allowed to resend your request for Protective Custody and that a new Protective Custody Investigation be completed." Doc. 35-1 at 36 (emphasis added). The language of the decision does not expressly require Plaintiff to do anything. The decision merely "recommends" that Plaintiff "be allowed" to reapply. Additionally, Defendants point to no authority that supports treating the appeal decision as imposing additional requirements beyond the standard administrative remedies procedures. Ultimately, Defendants have not demonstrated any step in the SOP Plaintiff did not

10

timely take, and Defendants have not demonstrated a legal basis for extending exhaustion requirements outside those bounds.  Defendants, therefore, have not met their burden of proving Plaintiff failed to exhaust administrative remedies.  Turner, 541 F.3d at 1082.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 25th day of February, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA