**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

WINDELL WEAVER,

        Plaintiff,

        v.

WILLIAM DANFORTH, RICKY STONE,
DEANNA CLEMENTS, and KAMERON
WILLIAMS,

        Defendants.

CIVIL ACTION NO.: 5:23-cv-61

## ORDER AND REPORT AND RECOMMENDATION

Defendants filed a Motion for Summary Judgment.  Doc. 76.  Plaintiff filed a Response.  Doc. 82.  Defendants filed a Reply.  Doc. 85.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.  I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.  I **DENY** Plaintiff's construed Motion for Additional Discovery.  Doc. 82.

### BACKGROUND

**I.     Plaintiff's Allegations and Procedural History**

Plaintiff filed this action under 42 U.S.C. § 1983.  Doc. 1.  In his Complaint, Plaintiff alleges that he was attacked by a gang member, Damien Gray, while incarcerated at Coffee Correctional Facility ("CCF") on May 13, 2023.  Id. at 5.  Plaintiff alleges that the attack could have been avoided because he requested protective custody multiple times prior to that date.  Id. at 6.  He specifically alleges that he requested protective custody in September 2022 and that he was placed in administrative segregation for 30 days as a result.  Id. at 7.  He alleges that an

inmate attacked him with a pen in December 2022 and he requested protective custody again.  Id. at 8.  He wrote to Defendants to inform them of these incidents.  Id. at 7.  Plaintiff also alleges that a prison officer threatened him multiple times throughout this period and that he informed prison supervisory officials, including Defendants.  Id. at 9.  His requests for protective custody were denied, according to Plaintiff, at least as late as May 8, 2023.  Id. at 10.  Plaintiff alleges that he was finally attacked on May 13, 2023.  Id.

After frivolity review of Plaintiff's Complaint, the Court dismissed Plaintiff's claims against certain entity Defendants.  Docs. 24, 30.  The Court allowed Plaintiff's Eighth Amendment failure to protect claims to proceed against Defendants Danforth, Stone, Clements, and Williams.  Doc. 25.  Defendants filed a motion to dismiss, arguing that Plaintiff failed to exhaust available administrative remedies.  Doc. 35.  The Court denied the motion.  Docs. 55, 56.

These Defendants then filed this Motion for Summary Judgment.  Doc. 76.  In the Motion, Defendants argue that Plaintiff cannot prove his claim because he cannot show that: Defendants were subjectively aware of a substantial risk of harm to him; Defendants' response to any risk of harm was objectively unreasonable; or any Defendant's alleged tortious conduct caused Plaintiff's any injury.  Id. at 8–14.

Plaintiff filed an "Objection to Defendants['] Motion for Summary Judgment."  Doc. 82. In his brief, Plaintiff provides a witness list and argues that Defendants have withheld responsive discovery documents.  Id. at 2–3.  Plaintiff argues that he demonstrated deliberate indifference because Defendants' procedure for denying him protective custody violated Georgia Department of Corrections' ("GDC") policies and that he told Defendants he needed to be placed in protective custody before he was attacked.  Id. at 6.  Plaintiff argues that he sufficiently

demonstrated causation because Defendants did not follow GDC procedures when they denied him protective custody.  Id. at 9–10.

## II.      Undisputed Material Facts

It is important to note at the outset that Plaintiff's Complaint is unsworn.  Generally, courts may not consider allegations in an unsworn complaint.  See Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered." (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986))).  However, Plaintiff subsequently filed a sworn declaration under penalty of perjury, swearing, among other things, that "[e]verything stated in my Complaint in Civil Action Number 5:23-cv-61 is the truth."  Doc. 82 at 4.  I, therefore, will consider factual allegations in the Complaint for purposes of this Motion.

Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 76-1.  Defendants' SMF is supported by: Joaquin Lemon's sworn declaration; Plaintiff's movement history; Plaintiff's November 2022 protective custody investigation report; Plaintiff's May 2023 incident statement; Plaintiff's November 2022 incident statement; Plaintiff's June 2023 protective custody investigation report; Damien Gray's June 2023 incident statement; CoreCivic classification policies; Plaintiff's medical records; and Damien Gray's deposition transcript.  Doc. 76-1 at 8–142.  Defendants separately filed Plaintiff's Prison Rape Elimination Act ("PREA") evaluation under seal.  Doc. 77-1.

Plaintiff did not submit a statement of material facts but rather cites evidence in the body of his Response.  Doc. 82.  He also titled his Response "Memorandum of Law with Supporting Material Facts."  Id. at 1.  Plaintiff provides a series of exhibits in support, including: a schedule

of activities; medical records; protective custody investigations; the GDC Standard Operating

Procedure for administrative segregation; CoreCivic segregation policies; grievance documents;

incident statements; and the GDC Standard Operating Procedure for PREA. Doc. 82 at 13–150.

I note that Plaintiff fails to support all his factual assertions with citations to the record. Local

Rule 56.1 requires that each statement of material fact be supported by a citation to the record. I

will not consider statements in Plaintiff's filings consisting of unsupported factual allegations,

conclusory statements, or supposition. Finally, when considering the record at summary

judgment, "all justifiable inferences are to be drawn" in favor of the non-movant. Shaw v. City

of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v.

Cotton, 572 U.S. 651 (2014)). Thus, the Court identifies the following undisputed, material facts

for the purposes of evaluating Defendants' Motion for Summary Judgment.

### III.    Background Facts

Plaintiff was incarcerated at CCF from August 9, 2022 to July 18, 2023. Doc. 76-1 at 14.

During the relevant time, William Danforth was warden, Ricky Stone was assistant warden of

care and treatment, Deanna Clements was a counselor, and Kameron Williams was a lieutenant.

Doc. 1 at 3. Plaintiff filed at least two requests for protective custody, one of which was

investigated starting on November 14, 2022. After investigation, his request was denied due to

"lack of evidence." Id. at 18–19. Plaintiff filed a grievance in January 2023, contending that he

had previously and continued to request protective custody. Doc. 82 at 73. On May 13, 2023,

Plaintiff was housed in a cell with Damien Gray. Doc. 76-1 at 10. On the same day, Plaintiff

was escorted by wheelchair to be seen by medical staff. Medical staff reported no visible

injuries. Id. at 103. On May 25, 2023, Plaintiff filed a health services request form, requesting

medical attention due to being "attacked by an inmate" in his cell. He complained of severe pain

in his back, spine, neck, and head.  Id. at 100.  Medical staff prescribed naproxen for pain and took x-rays, which demonstrated some issues "due to the aging process."  Id.  He had previously been seen for back pain in 2022.  Id. at 105.  Plaintiff was housed in administrative segregation from at least October 30, 2023 through the date of the alleged incident.  Doc. 1 at 7; Doc. 76-1 at  31.

After the incident occurred, Plaintiff filed another request for protective custody, which was investigated on June 21, 2023.[1]  As part of his request, he alleged that he was approached by a diverse group of gang members on August 23, 2022, and was told he needed to leave the dormitory "due to the nature of his charges."  Id. at 29.  Plaintiff alleged gang members approached him again on October 26, 2022, who warned Plaintiff to exit the dormitory.  Plaintiff alleged that, on November 2, 2022, a prison guard called him a pedophile and threatened him.  Id.  Plaintiff further alleged that he was attacked by his bunkmate on May 13, 2023.  Id. at 30.  The bunkmate allegedly told Plaintiff that gangs had "put a hit on" Plaintiff.  After investigation, Assistant Chief of Security Joaquin Lemon recommended denying protective custody because "there were no incident reports that an assault took place" and Plaintiff "failed to make a positive identification on anyone who allegedly threatened him, nor could he provide any names."  Id. at 31.  Prison officials denied Plaintiff's request for protective custody.  Id.

Policies applicable at CCF state that an inmate who submits a written request for protective custody shall be placed into administrative segregation while an investigation takes place to determine if the request should be granted.  Id. at 47.

---

[1]     Because Plaintiff's request and the subsequent investigation occurred after the alleged incident, the fact that this particular investigation occurred is not material to the allegations in the Complaint. Those allegations hinge on Defendants' alleged actions (or inaction) on and before May 13, 2023.  The investigation documents do, however, contain material information about events leading up to the alleged attack.

**LEGAL STANDARD**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [the non-moving party produces] is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences which can be drawn from the record in a light most favorable to the non-moving

party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

### I.   Plaintiff's Discovery Requests

Plaintiff, in his Response, requests several forms of information.  Plaintiff asks for: (1) subpoenas for witnesses to testify at a pretrial conference or at trial itself; (2) an order compelling Defendants to produce all statement forms Plaintiff submitted to Defendants previously requesting protective custody; and (3) an order compelling Defendants to "release all my medical profile history and medical history from May 13, 2025[] until now."  Doc. 82 at 1–3.

I construe Plaintiff's requests as a motion for additional discovery under Federal Rule of Civil Procedure 56(d).  Rule 56(d) states that a court may either deny a motion for summary judgment, defer ruling on it, extend the discovery period, or issue another appropriate order if the non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  But a court properly denies a Rule 56(d) motion when a plaintiff "had ample time and opportunity for discovery, yet failed to diligently pursue his options."  Barfield v. Brierton, 883 F.2d 923, 932 (11th Cir. 1989).  Further, "the grant or denial of a continuance is within the sound discretion of the trial court."  Id. at 931.

As an initial matter, Plaintiff failed to frame his requests in a proper affidavit or declaration.  Plaintiff has also failed to show that he exercised diligence in pursuing discovery.  Plaintiff primarily focuses on his indigence, explaining, "I am in prison, without a lawyer and without the funds and means to depose or give interrogatories to the witnesses listed in my Complaint."  Doc. 82 at 1.  Plaintiff does not explain what steps he has taken to this point to conduct discovery.  While the Court understands the challenges that pro se plaintiffs face, that

does not excuse a failure to diligently engage in discovery.  Regarding Plaintiff's request for his protective custody request forms, the only step he claims to have taken is a previous motion to compel.  Doc. 73.  The Court denied that motion because Plaintiff failed to show he conferred with Defendants in good faith before filing it.  As such, Plaintiff has not provided any showing that he diligently pursued this discovery information prior to requesting it here.  Plaintiff has similarly failed to show any diligence regarding his request for medical history documents.  This case has been pending since July 2023.  The discovery deadline was August 4, 2025.  Doc. 57.  Plaintiff had ample time and opportunity to diligently pursue discovery prior to the close of discovery, but he fails to point to a single discovery request that he propounded in that time frame.

Because Plaintiff has failed to satisfy his Rule 56(d) burden, I **DENY** his construed Motion for Additional Discovery and now address the parties' summary judgment arguments.  City of Miami Gardens v. Wells Fargo & Co., 931 F.3d 1274, 1286 (11th Cir. 2019) ("Failure to satisfy this burden is fatal to an argument that the district court granted summary judgment prematurely by failing to order or await the results of further discovery.").

## II.    Legal Standard for Failure to Protect

Prison officials have a duty to "take reasonable measures to guarantee the safety of inmates," including from "violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 832–33 (1994).  To establish liability on an Eighth Amendment failure to protect claim, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).  The first element is assessed objectively.  Marbury v. Warden, 936 F.3d 1227, 1233 (11th

Cir. 2019).  To demonstrate deliberate indifference, the Eleventh Circuit Court of Appeals has stated:

> the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk."

Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (quoting Farmer v. Brennan, 511 U.S. 825, 839, 844–45(1994)).  Finally, for causation, the plaintiff "must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury."  Marbury, 936 F.3d at 1233.

Defendants argue they are entitled to summary judgment because Plaintiff failed to demonstrate deliberate indifference and causation, the second and third elements of a failure to protect claim.  Doc. 76.  I do not, therefore, address whether Plaintiff faced an objectively serious risk of harm.

## III.   Deliberate Indifference

### A.   Subjective Awareness of Harm

Defendants argue that Plaintiff failed to demonstrate deliberate indifference because they were not subjectively aware of any substantial risk of serious harm to Plaintiff.  Id. at 9.  At most, contend Defendants, Plaintiff made them aware of "generalized threats which were never followed up with sufficient detail to inform a comprehensive investigation."  Id.

Plaintiff argues in response that Defendants did not properly follow GDC policies in denying him protective custody because they conducted "erroneous" investigations and did not grant him a placement hearing.  Doc. 82 at 6.  Plaintiff also argues that Defendants were

9

subjectively aware of harm because he "had warned the Defendants that [he] was being threatened by gang members and there was a great possibility that [he] was going to be attacked by gang members." Id. at 7.

The record shows that certain Defendants were at least aware that Plaintiff had filed requests for protective custody and that he believed he was at risk of harm. Plaintiff stated in the Complaint that he had "constantly" requested "verbally and in writing to be put on protective custody to the listed Defendants." Doc. 1 at 6. He described a series of threats, including that "the head gang members" of multiple gangs "told me again that I could not live in population" and "everybody in that dorm was going to stab me, jump me, and rob me." Id. at 7. Plaintiff stated that he gave one protective custody request form directly to Defendant Clements "but nothing changed in my administration segregation status." Id. Plaintiff alleged that he alerted Defendant Danforth specifically to threats from an officer in the prison but acknowledged that the officer in question "was moved to another post, no longer working in administration segregation." Id. at 8. It is also undisputed that prison officials (though it is unclear to what extent that included Defendants) denied his requests for protective custody due to "lack of evidence." Doc. 76-1 at 19, 31.

Importantly, to have subjective knowledge of a serious risk of harm, a prison official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." Carter, 352 F.3d at 1359 (quoting Farmer, 511 U.S. at 837). Here, Plaintiff presents a genuine question of fact about whether Defendants were aware that he faced a substantial risk of serious harm. Plaintiff presents evidence that he made Defendants aware that "gang members" had directly threatened him multiple times. Defendants argue that "[e]ven if" they "received and read the reports

Plaintiff submitted, those reports were still generalized threats which were never followed up with sufficient detail to inform a comprehensive investigation." Doc. 76 at 9. But his descriptions of the threats were specific—he explained who threatened him, why they threatened him, and what they threatened to do. Thus, there is at least a genuine dispute of material fact as to whether Defendants were subjectively aware that Plaintiff faced a substantial risk of serious harm.

### B.    Reasonableness of the Response

Even if a plaintiff can show subjective awareness, liability cannot attach if the officers in question responded reasonably to the risk of harm. Defendants argue that after his November 2022 request for protective custody, Plaintiff was moved to administrative segregation in response to his complaints. Doc. 76. After his May 2023 request for protective custody, Defendants argue that he was already in administrative segregation, but medical staff treated him and prison officials investigated his complaint. Id. at 10. Defendants argue they "did what they feasibly could—with no verifiable information—to ensure that Plaintiff was removed from the dorms he requested to be removed from." Id. at 10–11. Defendants also assert that even if Plaintiff had been placed in protective custody, under CCF policy, he would not be placed in a one-man cell like he requested. Id. at 12. Therefore, Defendants argue, they responded reasonably to any risk of harm of which they were aware.

Plaintiff does not specifically argue about the reasonableness of Defendants' response but, rather, argues that Defendants violated GDC policies in not granting him a placement hearing. Doc. 82 at 6. Plaintiff also argues that Defendants should have placed him in a "one man cell." Id. at 7.

11

Plaintiff has not shown a genuine dispute of material fact about whether Defendants responded reasonably, and the evidence in the record shows that they did.  In the Complaint, Plaintiff alleged that, in September 2022, other inmates threatened him, meaning that "if [Plaintiff] didn't go to administration segregation [he] was going to be stabbed up."  Doc. 1 at 6.  But Plaintiff conceded that he then "went to administration segregation" for 30 days.  Id. at 6–7.  He returned to the general population and alleged that gang members threatened him again, and he "was taken back to administration segregation" again.  Id. at 7.  After he informed prison officials that a correctional officer threatened him, that officer "was moved to another post, no longer working in administration segregation."  Id. at 8.  In addition, prison officials opened multiple investigations into Plaintiff's requests for protective custody.  Doc. 76-1 at 18, 28.  Plaintiff does not provide any reason why these steps were unreasonable, other than to say that the investigations were not "proper" or "granted."  Doc. 82.

Taken to its logical conclusion, Plaintiff's argument appears to be that the only reasonable response Defendants could have taken would have been to grant his requests for protective custody (which Plaintiff ostensibly means that he should have been moved to a one-man cell).  But inmates are not entitled to a certain classification, and neither Plaintiff nor the Court can compel prison administrators to classify Plaintiff in his preferred status.  See Young v. Wainwright, 449 F.2d 338, 339 (5th Cir. 1971) ("Classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances.").  And the Eleventh Circuit, in binding precedent, has previously affirmed summary judgment on facts similar to these.  Mosley v. Zachery, 966 F.3d 1265 (11th Cir. 2020).

In <u>Mosley</u>, the inmate plaintiff informed the defendant prison officer about a threat on his life. <u>Id.</u> at 1268.  The plaintiff argued that the only reasonable response was to place him in protective custody.  <u>Id.</u>  The court held that it was not because "[t]he reasonableness of a prison official's response to a substantial risk of serious harm depends on the facts the official knew when she learned about the threat."  <u>Id.</u>  In rare cases, protective custody might be the only reasonable response.  But in most cases, as in <u>Mosley</u>, "the prison official responds reasonably by taking the time to investigate the threat and look into different options all while making sure the prisoners are being supervised."  <u>Id.</u>  That is precisely what occurred here.  Prison administrators segregated Plaintiff from the environment he had been in and investigated the threat, ultimately denying his requests for protective custody based on a lack of evidence. Further, Plaintiff's allegation that he was eventually attacked is not relevant because officers who respond reasonably to a risk of harm are free from liability, "even if the harm ultimately was not averted."  <u>Farmer</u>, 511 U.S. at 844.  Viewing the facts in the light most favorable to Plaintiff, Defendants responded reasonably to the risks of harm Plaintiff faced.

## IV.    Causation

Defendants also argue that Plaintiff has failed to show any genuine issue of material fact concerning causation, the third element of a deliberate indifference claim.  Doc. 76 at 14. Plaintiff disputes this.  Doc. 82 at 8.  "The wrong in Eighth Amendment cases," however, "is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries . . . ."  <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1584 (11th Cir. 1995) (quoting <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1538 (11th Cir. 1993)).  I conclude above that no constitutional violation occurred.  And with no constitutionally infirm condition, Plaintiff's arguments around causation necessarily fail.  <u>See, e.g.</u>, <u>Wooden v. Jacobs</u>,

Civ. Action No. 5:25-cv-684, 2026 WL 99030, at *8 (N.D. Ala. Jan. 14, 2026) ("[W]ithout adequately alleging the existence of that deliberate indifference, Wooden also fails to show causation."); Ferrer v. Deandre, Case No. 23-cv-24699, 2023 WL 8878220, at *3 (S.D. Fla. Dec. 22, 2023) ("[B]ecause Plaintiff fails to plausibly allege that Defendants . . . were deliberately indifferent, he has not plausibly alleged a causal link between his injuries and their purported indifference.").

## V.        Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the filings in this cases, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.  Doc. 76.  I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.  I **DENY** Plaintiff's construed Motion for Additional Discovery.  Doc. 82.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of June, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA